**Marilyn A. SCHAEFER, on Behalf of Deanne M. SCHAEFER, Plaintiff-Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 85–2094.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1986.

Decided June 4, 1986.

**82**

Ronald N. Walker, Angel & Walker, S.C., Dodgeville, Wis., for plaintiff-appellant.

Jeffrey M. Teske, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Marilyn A. Schaefer, on behalf of her minor daughter Deanne M. Schaefer, appeals the district court's decision denying Deanne Schaefer surviving child's benefits under the Social Security Act (the "Act"). The court, upholding the final decision of the Secretary of Health and Human Services (the "Secretary"), concluded that Deanne Schaefer was not entitled to draw child's insurance benefits from her natural father's account. We affirm the decision of the district court.

## I.

Deanne Schaefer was born on June 13, 1981. David A. Kroll, the Wisconsin-domiciled wage earner who was later adjudged to be Deanne's natural father, was present at the hospital at the time of her birth. On his way home from the hospital, Kroll was killed in an automobile accident. Kroll and Marilyn Schaefer were unmarried at the time of Deanne's birth, although they were engaged to be married. Kroll had acknowledged his paternity to numerous individuals; he had never, however, executed a written acknowledgement nor had any court adjudicated the matter. Additionally, Kroll had never lived with Marilyn Schaefer nor had he contributed to her support, although there was evidence that Kroll was intending to provide for the medical costs incurred by the pregnancy and birth and for Deanne's support until she reached the age of majority.

On October 6, 1981, Evangeline A. Kroll, the personal representative of David Kroll's estate, and Marilyn Schaefer filed a joint petition for a determination of paternity in state court. The court determined that, under Wis.Stat.Ann. § 767.51 (West 1981 and 1985 Supp.), Kroll was Deanne's natural father, and, accordingly, ordered that a new birth certificate be issued listing Kroll as the father. The Secretary has acknowledged the validity of this determination.

Marilyn Schaefer also sought surviving child's insurance benefits for her daughter pursuant to the Act. She argues her daughter is entitled to these benefits under two theories. First, a dependent "child" of a deceased wage earner who has filed an appropriate application is entitled to such benefits under the Act. See 42 U.S.C.A. § 402(d) (West 1983 and 1985 Supp.).[1] The plaintiff argues that Deanne is Kroll's child

---

1. In pertinent part, section 402(d) provides:
   (1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—
   (A) has filed application for child's insurance benefits,
   (B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability (as defined in section 423(d) of this title)

   which began before he attained the age of 22, and
   (C) was dependent upon such individual—
   (i) if such individual is living, at the time such application was filed,
   (ii) if such individual has died, at the time of such death, or
   (iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,

for purposes of 42 U.S.C.A. § 416(h)(2)(A) (West 1983) which provides:

> In determining whether an applicant is a child or parent of a fully or currently insured individual for purposes of this subchapter, *the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death* or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. *Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.*

(emphasis added).

The plaintiff concedes that under the Wisconsin intestacy laws in effect on the date of Kroll's death her daughter would not have been entitled to inherit from her biological father based on a posthumous determination of paternity. At the time of Kroll's death, the Wisconsin statute regulating intestate succession for illegitimate children provided:

> An illegitimate child or his issue is entitled to take in the same manner as a legitimate child by intestate succession from and through (a) his mother, and (b) his father if the father has either been adjudicated to be such under ss. 52.21 to 52.45, or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him.

Wis.Stat.Ann. § 852.05(1) (West 1971).

Kroll had neither executed a writing nor had he acknowledged paternity in open court. Furthermore, at the time of his death, Wisconsin law (Wis.Stat. ch. 52) did not provide for posthumous paternity proceedings. *See In re Estate of Blumreich,* 84 Wis.2d 545, 267 N.W.2d 870, 873 (1978), *appeal dismissed sub nom. Caldwell v. Kaquatosh,* 439 U.S. 1061, 99 S.Ct. 822, 59 L.Ed.2d 26 (1979).

The plaintiff notes, however, that effective July 1, 1981 (eighteen days after Kroll died), section 852.05(1) was amended to read:

> An illegitimate child or the child's issue is entitled to take in the same manner as a legitimate child by intestate succession from and through his or her mother, and from and through his or her father *if the father has either been adjudicated to be the father in a paternity proceeding under ch. 767,* or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him.

Wis.Stat.Ann. § 852.05(1) (emphasis added).[2]

The Wisconsin legislature, also effective on July 1, 1981, repealed Chapter 52 and in its place enacted Chapter 767. Under Chapter 767, posthumous paternity proceedings are now permitted. *See* Wis.Stat. Ann. §§ 767.01(3), 767.45 (West 1981 and 1985 Supp.). Relying on these statutory changes and the paternity determination in this case, the plaintiff argues that her daughter is entitled to benefits as a surviving "child" under 42 U.S.C.A. § 402(d).

In the alternative, the plaintiff claims benefits are appropriate under 42 U.S.C.A. § 416(h)(3)(C)(ii) (West 1983). Under section 416(h)(3)(C)(ii) an applicant son or daughter of a deceased wage earner will be deemed a "child" entitled to benefits, even in the absence of a state court determina-

---

shall be entitled to a child's insurance benefit....

**2.** Section 852.05(1) has since been amended and now provides:

> A nonmarital child or the child's issue is entitled to take in the same manner as a marital child by intestate succession from and through his or her mother, and from and through his or her father if the father has either been adjudicated to be the father in a paternity proceeding under ch. 767, or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him.

Wis.Stat.Ann. § 852.05(1) (West 1985 Supp.).

tion, if the wage earner "is shown by evidence satisfactory to the Secretary to have been the mother or father of the applicant" and "was living with or contributing to the support of the applicant at the time" the wage earner died.

The Secretary rejected both arguments advanced by the plaintiff and denied Deanne Schaefer child's insurance benefits. Review of the decision was sought in the district court which affirmed the Secretary's denial. The plaintiff appeals from that court's decision.

## II.

Before proceeding to the substantive issues presented by this case, we must first examine the standards under which we review the district court's decision. In reviewing that court's decision, we employ the same standards it applied in reviewing the Secretary's decision. With respect to findings of fact, it is well-established that the conclusions of the Secretary must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C.A. § 405(g) (West 1983). *See Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982) (noting that "[t]he 'clearly erroneous' standard specified by Fed.R.Civ.P. 52(a) for review of a trial court's finding is inapplicable because the findings under scrutiny are those of the Secretary rather than a district court"). "Substantial evidence is that which 'a reasonable mind might accept as adequate to support [the] decision.'" *Taylor v. Schweiker*, 739 F.2d 1240, 1241 (7th Cir.1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The Secretary's conclusions of law, however, are not entitled to such deference. If error of law, it must be reversed. *See Strunk v. Heckler*, 732 F.2d 1357, 1359 (7th Cir.1984); *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980).

■ With these standards in mind, we proceed to an examination of the two issues raised by the plaintiff. Her first contention is that the Secretary failed to give the proper retroactive effect to the amended sections of Wisconsin law which, after July 1, 1981, provide for posthumous paternity determinations. The plaintiff argues that these amendments affect the intestacy succession in Wisconsin so that Deanne Schaefer would now be deemed an heir of David Kroll for purposes of the distribution of his personal property. *See* Wis.Stat. Ann. § 852.05(1). Accordingly, she maintains that under secion 416(h)(2)(A) Deanne Schaefer would be deemed Kroll's "child" and hence eligible for survivor's benefits. To bolster her argument, the plaintiff notes that the Wisconsin legislature specifically provided that Chapter 767 be applied retroactively in paternity proceedings. *See* Wis. Stat.Ann. § 767.45 (historical note quoting 1979 Wis. Laws ch. 352, § 40).[3]

We agree with the plaintiff that paternity determinations in Wisconsin may now take place posthumously and that such proceedings may occur even though the natural parent died prior to the effective date of Chapter 767 (*i.e.*, July 1, 1981). In fact, this is precisely what occurred in this case. However, we disagree with the plaintiff's contention that since Chapter 767 is to be applied retroactively in paternity cases, it must also be applied retroactively to determine intestate succession.[4] Contrary to the plaintiff's position, a judgment of paternity is something entirely distinct from a

3. The plaintiff moves that we certify the question of Chapter 767's retroactive application to the Wisconsin Supreme Court. Where permitted by the highest court of the state, Circuit Rule 13 provides for the certification of state law questions which control the outcome of a pending case. Wisconsin law provides that the Wisconsin Supreme Court may accept certified questions of state law from this court. *See* Wis.Stat.Ann. § 821.01 *et seq.* (West 1985 Supp.). Because we find that the issue the plaintiff raises can be resolved by reference to Wisconsin statutory and case law, we deny her motion for certification.

4. At oral argument, the plaintiff's counsel raised for the first time the fact that Kroll's estate had been adjudicated and that Deanne Schaefer had been found to be a legal heir of her natural father. Although we invited counsel to supplement the record with a copy of the order of heirship, he apparently chose not to do so.

right of inheritance, and, although the Wisconsin legislature made it clear that Chapter 767 was to apply retroactively in paternity proceedings, the legislature was silent as to whether Chapter 767 was to have retroactive effect in cases involving intestate distributions. We agree with the district court that had the Wisconsin legislature wanted Chapter 767 to affect intestate succession under Wis.Stat.Ann. § 852.05(1) retroactively it would have made its intentions clear.

This is especially true in light of the general rule acknowledged by Wisconsin courts that in determining rights of intestate succession the law in effect at the time of the intestate's death controls. *See In re Nelson's Estate*, 266 Wis. 617, 64 N.W.2d 406, 407 (1954). In the absence of evidence to the contrary, we are therefore left to assume that the Wisconsin legislature did not intend courts to apply Chapter 767 retroactively in determining intestate succession, as opposed to paternity. *See Eskra v. Morton*, 380 F.Supp. 205, 208 (W.D. Wis.1974) (change in Wisconsin inheritance law given prospective application only), *rev'd on other grounds*, 524 F.2d 9 (7th Cir.1975). *See also Feest v. Allis Chalmers Corp.*, 68 Wis.2d 760, 229 N.W.2d 651, 655 (1975) (noting that it is a settled rule of statutory construction that, absent language to the contrary, statutes are to be given prospective effect only); *Swanke v. Oneida County*, 265 Wis. 92, 60 N.W.2d 756, 759–60 (1953). Accordingly, we hold that the Secretary did not err in applying the Wisconsin law governing intestate succession effective on the date of Kroll's death in determining Deanne Schaefer's eligibility for benefits under the Act.[5]

■ Even conceding the above, the plaintiff argues that benefits were improperly denied because Kroll was intending to contribute to the support of Deanne Schaefer. Under 42 U.S.C.A. § 416(h)(3)(C)(ii), an applicant may be entitled to benefits, even if such applicant is not entitled to inherit property from the parent under the relevant state's intestacy laws, if two requirements are met: (1) if the applicant is able to provide sufficient evidence to the Secretary establishing that the insured wage earner is indeed the applicant's natural parent; and (2) if the insured wage earner "was living with or contributing to the support of the applicant at the time such insured individual died." In the present case, the Secretary concedes that the first prong of the test has been satisfied. Moreover, the plaintiff does not contest the finding that Kroll never lived with her. The only issue, therefore, is whether there is substantial evidence supporting the Secretary's conclusion that Kroll did not contribute sufficiently to Deanne Schaefer's support to justify an award of benefits.

The Secretary has articulated the support requirement as follows:

Contributions must be made regularly and must be large enough to meet an important part of your [*i.e.*, the applicant child's] ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. If the insured person only

---

**5.** Our decision is consistent with the Secretary's long-standing policy that the determination under 42 U.S.C.A. § 416(h)(2)(A) should be made with reference to the inheritance laws in effect when the insured wage earner died. This policy has now been codified at 20 C.F.R. § 404.354(b) (1985) which provides as follows:

Use of State laws. To decide your relationship to the insured, we look to the laws that are in the State where the insured has his or her permanent home when you apply for benefits. *If the insured is deceased, we look to the laws that were in effect at the time the insured worker died in the State where the insured had his or her permanent home.* If the insured's permanent home is not or was not in one of

the 50 States, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, or American Samoa, we will look at the laws of the District of Columbia. For a definition of permanent home, see § 404.303. *The State laws we use are the ones the courts would use to decide whether you could inherit a child's share of the insured's personal property if he or she were to die without leaving a will.* If these laws would not permit you to inherit the insured's personal property as his or her child, you may still be eligible for child's benefits if you are related to the insured in one of the other ways described in §§ 404.355 through 404.359.
(emphasis added).

provides gifts or donations once in a while for special purposes, they will not be considered contributions for your support. Although the insured's contributions must be made on a regular basis, temporary interruptions caused by circumstances beyond the insured person's control, such as illness or unemployment, will be disregarded unless during this interruption someone else takes over responsibility for supporting you on a permanent basis.

20 C.F.R. § 404.366(a)(2) (1985).

Courts have not, however, applied the support requirement of section 416(h)(3)(C)(ii) rigidly in unique circumstances such as are presented by this case. *See McNeal v. Schweiker*, 711 F.2d 18, 21 (3d Cir.1983); *Jones v. Harris*, 629 F.2d 334, 336 (4th Cir.1980). At least several courts have recognized that a regular, substantial and continuous support test that is generally applied to situations where both the applicant child and the wage earner (*i.e.*, in this case the father) are living is only of marginal value in cases where the child is born after or shortly before the wage earner's death. *See Doran v. Schweiker*, 681 F.2d 605, 608 (9th Cir.1982); *Adams v. Weinberger*, 521 F.2d 656, 659–60 (2d Cir.1975).

Recognizing that, especially early in the pregnancy, the needs of the fetus are primarily met by the mother, these courts have taken an approach which focuses on the level of support provided by the father relative to the actual needs of the child as well as the father's ability to make contributions. *E.g., Adams*, 521 F.2d at 660 (the statutory requirements for an award of benefits are met if "the support by the father for the unborn child was commensurate with the needs of the unborn child at the time of the father's death"). *See Doran*, 681 F.2d 608–09 (adopting test articulated in *Adams* and also taking "into account the economic circumstances of the child's father"). *Cf. Boyland v. Califano*, 633 F.2d 430, 434 (6th Cir.1980) ("The lack of economic well-being or regular income does not eliminate the statutory require-

ment of 'contribution.' However, where the resources of the wage earner are scarce and the contributions to his children important to them, the statutory requirements can be satisfied."). Nonetheless, in cases involving children born after or shortly before the wage earner's death some tangible support is still required to justify an award of benefits under section 416(h)(3)(C)(ii); a mere expectation of support from the insured wage earner is not enough. *Doran*, 681 F.2d at 609–10 (father's assistance in moving mother of unborn child and in performing household repairs sufficient to fulfill support requirement, especially in light of father's relative lack of affluence and three-month-old fetus' minimal needs); *Adams*, 521 F.2d at 660–61 (providing an apartment for the mother of the unborn child, "sporadic cash contributions," and payment of a portion of medical expenses sufficient to meet support requirement). *See Gay on Behalf of McBride v. Heckler*, 583 F.Supp. 499, 502 (N.D.Ga.1984) (noting that the grant of "benefits to illegitimate children who are born after their fathers' death and whose mothers received no financial support from the fathers in preparation for their birth would be contrary to ... Congressional intent because any indicia of dependency on the insured wage-earners would be lacking").

Even applying the support standard flexibly in the present case, we conclude that there is sufficient evidence to support the Secretary's decision denying benefits. There is no evidence in the record that Kroll provided any support to either Marilyn or Deanne Schaefer other than his promise of marriage and his promise to pay hospital expenses. *See Johnson v. Secretary of Health and Human Services*, 610 F.Supp. 276, 279 (E.D.Mich.1985) (father's unfulfilled intentions to marry mother and provide support for unborn child do not satisfy support requirement). Although Kroll was of limited means, and the support the child required prior to birth was relatively minimal, this does not excuse his failure to provide any tangible support to cover medical costs for prenatal care as

well as costs incurred in preparing for the baby's arrival such as, for example, the purchase of clothing. In the absence of any such tangible support, we agree with the Secretary and the district court that Kroll failed to fulfill the prerequisites necessary for an award of benefits to his surviving child under section 416(h)(3)(C)(ii).

### III.

For the reasons stated above, the decision of the district court upholding the Secretary's denial of benefits under the Act to Deanne Schaefer is AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

In denying benefits to the applicant, the Secretary and the majority have, in my view, frustrated the intent of both the Congress and the Wisconsin legislature.

It is clear that, in enacting 42 U.S.C. § 416(h)(2)(A), Congress intended that surviving child's insurance benefits be made available to those children who, under the substantive law of the insured decedent's domicile, would be considered a child of that insured decedent for purposes of intestate succession. The substantive legislative policy choice of Wisconsin has, in this respect, remained constant. Illegitimate children such as the applicant may inherit from their fathers as long as paternity has been established. At the time of the insured father's death, Wisconsin simply had no *procedure* by which filiation could be established posthumously. Implementation of new *procedures* designed to facilitate establishing paternity did not change Wisconsin's substantive law of intestate succession—the only relevant inquiry here. It simply provided a new *procedure* by which the necessary facts could be established. I find nothing in the federal statutory scheme or in the state substantive law of intestate succession which prevents the use of this new *procedural* tool to establish the necessary facts.

At the very least, before the court sanctions denial of benefits to this applicant, it ought to certify the state law question to the Wisconsin Supreme Court. Wisconsin

may in fact be permitting retroactive posthumous filiation proceedings in intestacy matters and, indeed, may have permitted such an action in this very case. *See supra* note 4. Under these circumstances, simple fairness to the applicant requires that any ambiguity as to the content of state law be clarified.

For these reasons, I respectfully dissent.